Argued December 8, affirmed December 22, 1914.

## DIBERT *v.* GIEBISCH.*

(144 Pac. 1184.)

**Master and Servant—Injury to Servant—Independent Contractor.**

1. A responsible contractor, performing work necessarily attended with danger, may not avoid liability for injury by letting the contract to an irresponsible person, but blasting stumps is not essentially dangerous within the rule, when proper care is exercised.

[As to who is an independent contractor, see note in Ann. Cas. 1913B, 573. As to liability of employer for acts of independent contractor, see notes in 51 Am. Dec. 200; 76 Am. St. Rep. 382.]

**Nuisance—Private Nuisance—Dangerous Premises.**

2. An owner allowing a nuisance to be created or to be continued by another on or adjacent to his premises in the prosecution of a busi-ness for his benefit and under his authority when he has power to abate the nuisance is liable for any injury resulting therefrom to a third person, but blasting stumps in a sparsely settled community does not necessarily create a nuisance, though it may be dangerous by the negligent use of high explosives.

**Negligence—Persons Liable—Independent Contractors.**

3. The law governing the negligence of an independent contractor is based on the principle that one person ought not to be compelled to answer for the neglect of another over whom he has no control.

**Master and Servant—Injury to Servant—Independent Contractor.**

4. In an action for injuries to an employee, the defense of negli-gence of an independent contractor will be carefully scrutinized to determine the relation between the parties, and the mere fact of nomi-nal employment by an independent contractor does not relieve the employer of liability for injury to an employee.

*On the question whether the payment of wages is a test of the ex-istence of the relation of master and servant, see note in 37 L. R. A. 38. REPORTER.

**Evidence—Admissions.**

5.   Testimony that one admitted that he was a partner in a firm for whom an employee worked when injured was admissible as against him to establish the relation of master and servant at the time of the accident.

**Master and Servant—Injury to Servant—Existence of Relation.**

6.   Payments by defendants of wages to men employed was admissible to show that the men were their employees, and liable for injuries to them negligently inflicted.

**Master and Servant—Injury to Servant—Liability—Independent Contractor.**

7.   That defendants, who were sued for an injury to an employee, paid charges for medical attention and hospital dues, was admissible to show that they were employers, though they testified that the disbursements were made at the request and on the account of an alleged independent contractor.

**Master and Servant—Injury to Servant—Independent Contractor—Evidence.**

8.   In an action for injuries to an employee evidence *held* to sustain a finding that the employee was in the employment of defendant and not of a third person as independent contractor.

From Multnomah: JOHN S. COKE, Judge.

Department 1.   Statement by MR. JUSTICE MOORE.

This is an action by G. I. Dibert against Anton Giebisch and Ferdinand Joplin, partners as Giebisch & Joplin, to recover damages for a personal injury. The defendants, on February 10, 1913, entered into a written contract with W. W. Vensel, whereby they stipulated to furnish all the labor and material necessary to clear and grub for him about 50 acres of land near Mosier, Oregon, for which service they were to receive $150 per acre.   The plaintiff was engaged by an employment agency in Portland to assist in the performance of that work, which he began March 24, 1913, under the supervision of L. E. Thompson.   On the 10th of the next month, as the plaintiff was cutting the roots of a large stump around which the dirt had been

74 Or.—5

loosened by a blast of powder, his ax struck sticks of dynamite that had not been discharged, causing an explosion, whereby he was injured, in consequence of which it became necessary to remove his left eye. The complaint charges that the hurt was caused by the negligence of the defendants, their agents and vice-principals, setting forth the particulars of the alleged carelessness.

The answer denies the negligence alleged, and for a, further defense avers that on February 20, 1913, the defendants sublet the contract for clearing the land to L. E. Thompson by a writing whereby he agreed to furnish the labor, tools, etc., and to perform the work according to the terms of the Vensel contract, for which service the defendants were to pay Thompson $125 per acre; that thereafter he performed the terms of his agreement in the execution of which they had no supervision or control, except the right to see that the work was finished according to the stipulations of his contract with them; that Thompson was an independent contractor for whose negligence they are in no wise liable, and that the plaintiff was never at any time employed by the defendants or either of them.

The reply denied the allegations of new matter in the answer, and, the cause having been tried, the plaintiff secured a judgment for $2,000, and the defendants appeal.          AFFIRMED.

For appellants there was a brief over the names of *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. George W. Stapleton.*

For respondent there was a brief with oral arguments by *Mr. Albert Streiff* and *Mr. G. E. Hamaker.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is maintained that no competent evidence was received tending to establish the relation of master and servant between the defendants and the plaintiff at the time he was hurt, and, this being so, errors were committed in denying a motion for a judgment of nonsuit and in refusing to direct a verdict for the defendants. The plaintiff testified that about five days after he was hurt the defendant Joplin, in company with Thompson, visited him in a hospital at The Dalles, Oregon, where he was taken after the injury, and Joplin there stated to the witness that he was a member of the firm for whom Dibert had been working; that he would do all in his power to aid him; that he then told the attending physician or nurse that if the witness needed a special nurse, one should be employed and any expense thereby incurred would be paid by sending the bill therefor to the defendants' office in Portland. The plaintiff further testified as follows:

"After that the doctor had left and went away, or the nurse, whichever it was, and Mr. Joplin told me if I was dissatisfied at that hospital to telephone down to him, and he would come there and get me and bring me down to Portland; but afterward he told me I should telephone to Mr. Thompson, and that he was closer and could come up and get me, and he would make arrangements in Portland, so when I got down there everything would be ready."

It is proper to say that when this declaration is claimed to have been made by Mr. Joplin, the plaintiff, by reason of the injury, was then totally blind. While at that hospital he received from the defendants a check which they had drawn at Portland, Oregon, on a bank in that city for the money he had earned

in clearing land.   It also appears that the plaintiff was thereafter taken to a hospital in Portland, where his eye was removed and the surgeon's charges therefor and the expense incurred for nursing the plaintiff were paid by the defendants.   After Dibert had recovered so that he thought he could resume labor, he was sent by the defendants to Hood River, Oregon, where he worked, grading the streets of that city for a private corporation, a part of whose capital stock was owned by the defendants, who drew similar checks in his favor for the labor he had performed.

The defendants severally testified that having entered into a contract with Vensel to clear land, they about two days thereafter sublet the entire work to Thompson by an oral agreement, the terms of which were thereafter reduced to writing and signed by them. Their testimony in this respect is corroborated by that of Thompson.   The latter contract is dated February 20, 1913, but neither party thereto would testify with any degree of certainty when his name was subscribed to the writing.   Thompson, however, stated upon oath that he signed that contract about April 15, 1913.   The defendants stated upon oath that Thompson represented to them, before the contract for clearing the land was sublet to him, that he did not then have sufficient means with which to carry on the work, whereupon they orally agreed to advance such sums of money, and to furnish such quantities of goods, wares, merchandise, etc., as he might need for that purpose, pursuant to which promise they issued the check to the plaintiff for the work he had performed in clearing land and also drew checks in favor of other employees.

The testimony given by the plaintiff is contradicted in almost every material particular except as to the circumstances of the issuance of checks to which refer-

ence has been made and explanation thereof given. Thompson testified that he finished the work June 30, 1913, in the performance of which he lost money, but he does not state the amount thereof. This cause was tried December 11, 1913, more than five months after the land was cleared. On cross-examination Thompson was asked:

"Now, have you the statements which the defendants rendered to you on account of the payment of these bills? He replied, 'No, I have not.'

"Q. Was any written statement ever rendered you?

"A. No; I have never figured over with them or had a full settlement with them since I came down. I have been busy, and so have they, and I didn't get down to it."

The evidence clearly shows that the dynamite the explosion of which caused the injury, was placed beneath the roots of the stump by the "powder-man," a fellow-servant of the plaintiff who had been engaged for that purpose in clearing the land. In order that the rule of *respondeat superior* may be invoked, it is important to determine who was in fact the plaintiff's employer and for whom he was laboring when he was hurt.

1. If a responsible party, having work to perform, the execution of which is necessarily attended with danger, undertake to avoid liability for injury to third persons by letting the contract to an irresponsible party, he cannot be permitted thus to take advantage of his own wrong and escape the consequences of his act, because the making of the contract may well be regarded as a fraud on his part: *Kellogg* v. *Payne,* 21 Iowa, 575.

2. So, too, if the owner of real property should willfully allow a nuisance to be created or to be continued

by another on or adjacent to his premises in the prosecution of a business for his benefit and under his authority, when he had full power to prevent or abate the nuisance he would be justly liable for any injury that might result therefrom to a third person: *Winniford* v. *MacLeod,* 68 Or. 301 (136 Pac. 25).

These two exceptions to the rule adverted to are not thought to be involved herein, since it is believed that the work of blasting stumps is not essentially dangerous when proper care is exercised. Nor does such work in a sparsely settled community necessarily create a nuisance, but it may be and often is dangerous by reason of the negligent use of the high explosives employed to clear land.

3, 4. The law with respect to the negligence of an independent contractor is formed upon the principle that one person should not be compelled to answer for the fault or neglect of another over whom he has no control. In actions to recover damages for injuries caused by the alleged negligence of the master, where the defense is that the carelessness was that of an independent contractor, a court will not hesitate carefully to scrutinize the substance of the contract and all the attending circumstances in order to determine the actual relation which the alleged master sustained to the person employed. The mere fact of nominal employment by an independent contractor will not relieve the master of liability where the servant is in fact in his employ: *Nelson* v. *American Cement Plaster Co.,* 84 Kan. 797 (115 Pac. 578).

5. The testimony to the effect that Joplin admitted he was a member of the firm for whom the plaintiff had been working when he was hurt was admissible, as against that defendant, since it tended to establish the relation of master and servant between them at the

time: *Stephens* v. *Pierson,* 8 Ala. App. 626 (62 South.
969); *Rosseau* v. *Deschenes,* 203 Mass. 261 (89 N. E.
391).

6. The testimony showing payments made by the
defendants of the wages of the men employed in clear-
ing the land was admissible as a circumstance from
which the jury might reasonably have inferred that
Giebisch & Joplin were having the work done on their
own account: *Capehardt* v. *Murta,* 165 Mo. App. 55
(145 S. W. 827).

7. In *Trepannier* v. *Cote,* 207 Mass. 484, 486 (93
N. E. 796), in speaking of a circumstance tending to
connect a party with a personal injury, it is said:

"There was also evidence that the defendant took
the plaintiff home in his buggy after the accident, or
hired and paid his brother, a livery-stable keeper, for
doing so. This could be taken to be an admission
that he was the person interested."

Upon principle it would seem that the circumstance
so adverted to must be of little weight, for if the ·inci-
dent of rendering first aid to or incurring trivial ex-
pense for an injured person were in every instance
regarded as imposing liability upon the person per-
forming such charitable service, it would necessarily
follow that acts of kindness in cases of urgent need
would rarely be performed. In the case at bar, how-
ever, the charges for medical attention and hospital
dues amounting to $181.55 were paid by the defend-
ants, but their testimony in explanation thereof is to
the effect that such disbursements were made on
Thompson's account and at his request.

The case of *De Sandro* v. *Missoula Light & Water
Co.,* 48 Mont. 226, 243, 248 (136 Pac. 711, 716, 718), was
an action to recover from that defendant and Adam
Hadalin damages for a personal injury caused by the

caving of earth in a ditch in which the plaintiff was working. As one of the affirmative defenses, it was alleged in the answer that at the time De Sandro was hurt he was not in the employ of the Light & Water Company but in that of Hadalin, an independent contractor. The cause having been tried, resulted in a judgment against the company alone, and it appealed. The evidence received disclosed that Hadalin had agreed to dig and refill all trenches for work required in the year 1910, for which service the company promised to pay him certain prices per foot. Their contract, however, was not reduced to writing and signed until after the plaintiff was injured, when it was dated back to April 1, 1910, the time Hadalin commenced performing the service. It further appeared that, from the time the work began until the written contract was signed, the company made partial settlements with, and paid sums of money for, the amounts due for labor to Hadalin, who employed and paid all the men engaged in the service. The judgment in that action was reversed on the ground:

"That where the jury arbitrarily acquits the servant or agent through whose negligence the wrong was done, the verdict against the principal ought [not] to be allowed to stand; the reason being that the plaintiff should not be concluded by the capricious conduct of the jury."

In deciding the case, however, Mr. Chief Justice BRANTLY, evidently as a guide to a new trial, said:

"It is insisted by counsel that this evidence [referring to the partial payments and the employment of men hereinbefore mentioned] stands uncontroverted by any evidence in the record, and hence that the court erred in submitting to the jury the question whether Hadalin was an independent contractor. With this contention we do not agree. But for the fact that the

parties prepared and signed the writing in September, the question whether there was or was not a contract would have been left entirely to rest upon parol evidence. The preparation of the writing at that time did not change the situation so far as it covered the time prior to the accident. In the absence of the writing it would have been the exclusive province of the jury to say whether there was or was not a contract; for whether there was or not depended upon the truth of the statements of Brown and Hadalin in that behalf, in the light of the surrounding circumstances. There was some evidence that Wright, the general foreman of the company, was present and gave some orders to Odenwald touching the completion of the particular work on which Hadalin was engaged on the day before the accident. This was a circumstance to be considered by the jury in connection with the other evidence as to how far the company retained control of the work. The mode pursued for periodical settlements between Hadalin and the company tended to corroborate Hadalin and Brown as to the terms of the contract, but this did not so conclusively establish the fact of its existence that the court was warranted in taking the case from the jury. The production of the writing did not aid the defendant's case; on the contrary, the fact that it was executed after the accident, and dated back to cover the time of its occurrence, might be suggestive of fabrication in order to save the company from liability. This was also a circumstance to be considered by the jury; for the question of good or bad faith of the transaction thus was made a matter of inquiry to be determined by the jury.''

8. The opinion in that case, which is predicated upon evidence tending to support the defense of an independent contractor with much more potency than the testimony in the case at bar, leaves but little to be said upon the chief inquiry involved herein. In addition to antedating the contract after Dibert was hurt, as admitted by Thompson, there is another circumstance

which may have materially induced the jury to find in favor of the plaintiff. It will be remembered that Thompson testified that in clearing the land he lost money, yet at the time this cause was tried the defendants had not furnished him with any statement of his account with them. There was received in evidence, however, what purports to be the defendants' written account with Thompson, on the last page of which he is charged, under date of July 5, 1913, with "Brought For'd, $9,463.54," and other items, the last of which is noted as of September 20, 1913, amounting to $227.60. He is credited on that page as of July 5, 1913, with "Brought For'd, $1.12, another item of $4.90 and 53 acres @ $125, $6,625.00." The sums of these columns are noted in pencil, but no balance appears to have been struck, thereby tending to show that the account had not been closed, and to confirm Thompson's testimony in this particular. That no statement had been rendered him seems improbable if he were an independent contractor as alleged.

Believing that no errors were committed in submitting the cause to the jury, the judgment should be affirmed; and it is so ordered.            AFFIRMED.

MR. JUSTICE BURNETT, MR. JUSTICE BEAN and MR. JUSTICE RAMSEY concur.