Submitted on remand August 28; resubmitted In Banc December 11, 1984, affirmed
July 3, reconsideration denied August 16, petition for review denied October 15, 1985
(300 Or 162)

# PENDERGRASS,
*Respondent,*

*v.*

# STATE OF OREGON et al,
*Appellants.*

## (A8003-01190; CA A24279)

702 P2d 444

Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, James E. Mountain, Jr., Solicitor General, and Virginia L. Linder, Assistant Attorney General, Salem, appeared for appellants.

I. Franklin Hunsaker, R. G. Stephenson and Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland, appeared for respondent.

RICHARDSON, J.

## RICHARDSON, J.

The Supreme Court allowed defendants' petition for review and remanded this appeal to us for reconsideration in the light of *Miller v. Grants Pass Irrigation,* 297 Or 312, 686 P2d 324 (1984). *Pendergrass v. State of Oregon,* 297 Or 643, 686 P2d 369 (1984). *Miller* was decided by the Supreme Court approximately five months after our original decision in this case.

We restate the facts from our earlier opinion:

"The state appeals a judgment for plaintiff following a jury verdict in this wrongful death action. Plaintiff's decedent, while riding a bicycle, was struck and killed by a vehicle driven by Gary Robb. Robb had suffered an epileptic seizure and blacked out just prior to losing control of his vehicle and striking decedent. Robb's epileptic condition was known to the Motor Vehicle Division (MVD). Plaintiff's theory of liability was that the defendants were negligent in failing to suspend or prevent renewal of Robb's operator's license and that their negligence caused the decedent's death. The state assigns as error the giving of an instruction on negligence *per se* and the court's denial of a motion to strike two allegations of negligence.

"The fatal accident occurred on October 1, 1978. At that time Robb had a current Oregon operator's license and had been licensed to drive since 1970. MVD had been aware since 1970 that he suffered from a seizure disorder, but pursuant to MVD evaluation procedures it was determined that he could be licensed to drive. In 1975 he was given a periodic reevaluation and received a medical clearance to retain his license. He was scheduled for a reevaluation in 1977.

"In September, 1977, pursuant to MVD regulation, its Medical Reexam Unit sent Robb a letter requesting a certificate from his physician and his personal affidavit as to any seizures within the past two years. Initial evaluation of such medical data is done by the State Health Division, which makes a recommendation to MVD respecting the continued licensing of the driver. A copy of the letter to Robb was sent to the Health Division. The physician's certificate was completed and returned to the Health Division by Robb's physician. Robb's personal affidavit was not returned. The Health Division sent a letter and another affidavit to Robb in October, 1977. The letter advised him that the physician's certificate had been received and that any action on reevaluation would be withheld until the affidavit was received. A copy

of the letter was sent to the MVD Medical Reexam Unit. Robb did not respond to that request either, and his file was not submitted to the Health Division for review.

"The Health Division sent another reminder to Robb in November, 1977, but he did not respond. On January 4, 1978, still another reminder with an affidavit enclosed was sent to him with instructions to return the completed affidavit in two weeks. He did not return it.

"Former OAR 735-31-035(9) provided, in essence, that failure to comply with the request for information within 45 days 'will result in immediate suspension of the driver's license to operate a motor vehicle.' Suspension proceedings were not commenced. Robb's file in MVD was 'red stopped' on May 1, 1978. The 'red stop' should have been entered in the MVD computer pursuant to internal procedures, and would have resulted in the Medical Reexam Unit being notified if a renewal of Robb's license had been applied for in one of the MVD field offices. The 'red stop' was not entered in the computer and on May 8, 1978, Robb's license was renewed. On August 31, 1978, he received a duplicate license. The Medical Reexam Unit was not notified on either occasion. No action was taken by MVD on reevaluation of Robb's medical condition and proceedings to suspend his license were not commenced before the accident." 66 Or App at 609-10.

*Miller v. Grants Pass Irrigation, supra,* is germane to defendants' assignment that the trial court erred by not granting their motion to strike two of the eight specifications of negligence in the complaint. Defendants argue that we should reverse the trial court's denial of the motion because, on their face, the challenged allegations relate to acts that involve governmental discretion and defendants are therefore immune from liability for those acts under ORS 30.265(3)(c). The allegations against which defendants moved claim that they were negligent by:

"g. Allowing seizure disorder drivers to automatically renew their motor vehicle licenses on anniversary dates without confirmation of their driving status through the Department of Motor Vehicles Medical and Re-Exam Unit.

"h. Failing to establish reasonable safeguards or impose reasonable guidelines to prevent seizure disorder drivers from automatically renewing their motor vehicle licenses on anniversary dates."[1]

---

[1] The allegations refer to motor vehicle licenses rather than operator's licenses.

In our earlier opinion, we relied on *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), and concluded that the challenged allegations relate to the implementation or application of previously formulated policy rather than to the exercise of a policy judgment. We reasoned that an agency's decision (or failure to decide) whether to apply the established policy of a statute or its own rules to particular situations is a matter of implementation rather than policy judgment and that that designation is not changed just because the implementing action is or would be an exercise of rulemaking authority. We therefore held that defendants were not immune from tort liability under ORS 30.265(3)(c).

The focus of our earlier opinion, like the Supreme Court's focus in *Stevenson,* was on the nature of the agency's decision. Our understanding of the court's more recent opinion in *Miller* is that, when the decision involves rulemaking or adoption of procedures by a state agency on which the legislature has conferred rulemaking authority through a statute that is facially discretionary, the focus shifts from the nature of the decision to the nature of the statute or statutes that authorize the decision.

The question in *Miller* was whether "the state is immune from potential liability for the [State Marine Board's] failure to adopt, or to consider adopting, safety regulations for boating immediately upstream from the dam" where the plaintiffs were injured in a boating accident. 297 Or at 315. The court stated:

> "Whether 'consideration' of a possible regulation is discretionary or mandatory depends on the legal directive delegating that authority or duty, just as is true of the decision whether to adopt a regulation. It is a question of law, although in the absence of a written trail of delegation and subdelegation to subordinate officials it sometimes may depend on a determination of disputed facts. *See Bradford v. Davis,* 290 Or 855, 864-65, 626 P2d 1376 (1981). This is what *Stevenson*

---

Defendants base no argument on that fact. Although a failure to state a claim may be raised at any time, including on appeal, we are not required to consider *sua sponte* whether a complaint fails to state a claim or whether it fails to state a claim for a reason other than the one the defendant advances. *Mt. Fir Lumber Co. v. Temple Dist. Co.,* 70 Or App 192, 196, n 3, 688 P2d 1378 (1984). The motion to strike was denied by the trial court, and this is not a situation where alternative bases to support a trial court's granting of a motion to strike or dismiss need be considered.

meant in saying that evidence of how a decision was made sometimes may be necessary to determine whether an act or omission represented the exercise of delegated policy discretion or the execution of a policy that previously has settled upon relatively concrete ends and means. That determination requires care in tracing the nature of delegated authority. It requires special care when the same body both makes and applies policy on its own authority, as often is true of local governments. But when the act or failure to act is that of the heads of a statutory agency, like the State Marine Board, the question whether they have a nondiscretionary duty to consider possible action simply depends on interpretation of the governing statute or perhaps a previously adopted rule.

"Here the issue is answered by the pertinent statute, ORS 488.600. Subsection (1), quoted above, states that the board 'may' make any regulations relating to the operation of boats. That is authorizing, not mandatory, language both in text and in context.[4] There is no reason to believe that the legislature intended the board systematically to study and consider the advisibility of making special regulations for all waters within the state, although the board is authorized to do so if it chooses. * * *

---

"[4]In ORS 488.830, by contrast, certain activities are listed as 'duties' of the board as well as 'powers,' implying that the board is directed to undertake them as appropriate to the various items on the list even if the substance of the action to be taken on one or another item may be discretionary. We do not read the general 'duty' to '[m]ake all rules necessary to carry out the provisions of this chapter,' ORS 488.830(1), to contradict the discretionary nature of the specific authorization to make 'special regulations' under ORS 488.600(1).

"It should be clear from the foregoing that 'rulemaking' is not necessarily a discretionary function. 'Rules' may include statements of technical or detailed specifications of a prescribed policy that an agency is mandated to issue without independent policy judgment. On the other hand, statutes or rules may leave even genuine policy choices to be made in case-by-case decisions. For this reason, we do not here review the analogous cases that the parties have helpfully cited; the question does not hinge on case matching but on the legal source and scope of original or delegated policy discretion in the case at issue.

"Immunity aside, it is another question whether exercising or failing to exercise a statutory duty to make public rules

for private conduct gives rise to civil liability." 297 Or at 317-18.

The text of *Miller* suggests that a state agency's failure to adopt or consider a particular rule is immune *per se,* if the agency is the legislature's direct delegate and if the statute that authorizes it to adopt rules says that it "may" do so rather than that it "shall." However, the quoted footnote in *Miller* says that it is clear that rulemaking is not always a discretionary exercise and that rulemaking is not discretionary when the rules entail only "detailed specifications of a prescribed policy that an agency is mandated to issue without independent policy judgment."

ORS 481.940 provides:

"The administrator [of MVD] with the approval of the director [of the Department of Transportation] *may* make the rules and regulations necessary for the administration and enforcement of the laws which [MVD] is charged with administering." (Emphasis supplied.)

ORS 482.260 provides, in relevant part:

"(1)    Except as provided in subsections (2) and (3) of this section, the division *shall* examine every applicant for an operator's or chauffeur's license before issuing either license. The examination shall include:

"* * * * *

"(d)    Further examination as may be necessary to determine:

"(A)    Whether any facts exist which would bar issuing a license under ORS 482.110 to 482.150 * * *

"* * * * *.

"(2)    The division *may* waive the examination of any person applying for the renewal of an operator's or operator-chauffeur's license issued under the laws of this state, *except when the division has reason to believe that an applicant for an operator's license is not qualified to hold an operator's license under this chapter, or when an applicant for the renewal of an operator-chauffeur's license has not previously been examined.*

"* * * * *

"(4)    The division may require any licensed motor vehicle operator to appear for an examination whenever the

division has reason to believe that the operator might not be qualified to hold an operator's license under this chapter. The failure of an operator to appear within a reasonable length of time after being notified so to do or his failure to satisfactorily complete the required examination, shall be sufficient reason for the suspension of his license or of his right to apply for an operator's license.

"* * * * *" (Emphasis supplied.)

ORS 482.130, one of the provisions to which ORS 482.260(1)(d)(A) refers, provides in part:

"(1)  The division shall not issue an operator's or chauffeur's license to any person when in the opinion of the division such person is:

"(a)  Afflicted with or subject to any condition which brings about momentary or prolonged lapses of consciousness or control, which is or may become chronic * * *

"* * * * *."

Defendants formulated their argument in this appeal before the Supreme Court decided *Miller,* and they rely on ORS 482.260 rather than ORS 481.940. Their basic premises are that, with exceptions that are not germane here, ORS 482.260(2) makes reexamination of drivers applying for renewed licenses optional and that ORS 482.260(4) "permits but does not require the MVD to reexamine any licensed driver or class of licensed drivers upon a reasonable belief that those drivers might not be qualified to hold a license." Defendants' overriding point is that *no* procedure is *mandated* by the statute and that the decision whether to adopt or consider the specific safeguards contemplated by the challenged allegations—or, for that matter, *any* safeguards—was a matter of policy discretion. We do not agree that MVD's duties with respect to Robb were optional under ORS 482.260. Subsection (1) *requires* examinations of applicants for licenses. Subsection (2) gives MVD discretion to waive that requirement as to applicants for license renewals *except when,* as here, MVD has reason to believe that the applicant is unqualified to hold a license. Moreover, with exceptions that are not material to our inquiry, *see* ORS 482.130(2), ORS 482.130(1)(a) proscribes the issuance of an operator's license to a person who, in MVD's opinion, is afflicted with a condition such as Robb's that may bring about lapses of

consciousness or control. ORS 482.260(1)(d)(A) requires necessary further examination to determine "[w]hether any facts exist which would bar issuing a license," *inter alia,* under ORS 482.130. We conclude that MVD violated a mandatory statutory duty to examine Robb.

■    The question remains whether, in the light of *Miller,* the fact that ORS 481.940 gives MVD *general discretionary* rulemaking authority makes the agency immune from liability for its acts or omissions in adopting rules and procedures to implement its *specific mandatory* duties under ORS 482.260. We understand the pertinent point of *Miller* to be that a direct legislative delegation of discretionary rulemaking authority to the "heads of a statutory agency" evinces a legislative intent that the persons to whom the authority is delegated are to exercise policy judgment over *whether* to promulgate rules and *what rules* to promulgate. Here, unlike in *Miller,* there is a relevant statute, other than the one conferring rulemaking authority, that imposes mandatory duties on the agency.

We do not understand *Miller* to state or imply that, because an agency's power to promulgate rules is discretionary under the general statute that gives it rulemaking authority, it may avoid liability for its failure to carry out the mandatory command of a separate statute by arguing that it was not required to adopt the rules and procedures necessary to implement the mandatory statute. ORS 482.260 is not self-executing; MVD can fulfill the statute's requirements only if it establishes procedures to do so. Defendants' argument that MVD has discretion over whether to adopt procedures and what procedures to adopt is the equivalent of arguing that they have discretion not to perform their duties under ORS 482.260. We do not agree with defendants' argument, and we do not think that *Miller* requires that we hold in accordance with the argument. The rules and procedures necessary to defendants' performance of their duties under ORS 482.260 are, in the words of the *Miller* footnote quoted above, "detailed specifications of a prescribed policy that [MVD] is mandated to issue without independent policy judgment."

■    On the basis of the foregoing analysis, we conclude that the allegation in paragraph g does not challenge any action involving the exercise of policy judgment. The allegation is simply that defendants did not adequately carry out

either a mandatory statutory requirement or the procedures defendants had adopted to give effect to that requirement. The performance of the statutory duty was not discretionary and, therefore, neither was the implementation of existing procedures that were adopted to enable defendants to perform the statutory responsibility.

■■ Although the question is closer, we also conclude that paragraph h does not allege conduct that comes within defendants' discretionary acts immunity. The allegation that defendants failed to "establish reasonable safeguards or impose reasonable guidelines" does relate to the substance of defendants' rules and procedures, and it does permit a factfinder to assay the reasonableness of those rules and procedures. However, if—as we have concluded—defendants have no discretion over *whether* to adopt procedures to carry out the requirements of ORS 482.260, it follows that the substance of those procedures *must* be reasonably designed to satisfy the statute's requirements. Stated otherwise, if defendants are required to fulfill the mandates of ORS 482.260 and to adopt the rules and procedures necessary to do so, they have no more discretion to adopt rules and procedures that are not reasonable devices for achieving the statutory requirements than to adopt no rules at all. The rulemaking function is not a discretionary one when it is simply an adjunct of the duty to execute a mandatory statute, and delineating the specific content of rules involves no policy judgment when the policy is established by statute and the rules have no purpose except to give effect to the statutory policy. We hold that the challenged allegations do not relate to the exercise of policy judgment by defendants and that the trial court correctly denied the motion to strike them.

Affirmed.[2]

---

[2] The Supreme Court's remand does not bear on the issues in the appeal other than the assignment of error discussed in the text. We adhere to the reasoning and disposition of our earlier opinion with regard to the other issues.