Argued and submitted September 14, reversed and remanded on appeal and on cross-appeal December 21, 1994

Edgar COLLVER,
*Respondent - Cross-Appellant,*

*v.*

SALEM INSURANCE AGENCY, INC.,
an Oregon corporation
and Bret Brouse,
*Defendants - Cross-Respondents,*

*and*

GUARANTY NATIONAL INSURANCE CO.,
a foreign corporation,
*Appellant - Cross-Respondent.*

(16-92-01649; CA A79128)

887 P2d 836

Joel S. DeVore argued the cause for appellant - cross-respondent. With him on the briefs was Luvaas, Cobb, Richards & Fraser, P.C.

George W. Kelly argued the cause and filed the briefs for respondent - cross-appellant.

George A. Burgott argued the cause for defendants - cross-respondents. With him on the brief was Atherly Butler Burgott Leslie & Stine.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant Guaranty National Insurance Co. (Guaranty) appeals a judgment in favor of plaintiff after the jury returned a verdict in favor of plaintiff on all claims against all defendants.[1] The trial court set aside the verdicts on plaintiff's claims for negligence and entered judgment for defendants on those claims notwithstanding the verdict (JNOV), ORCP 63, but entered judgment on claims that Guaranty breached its insurance agreement with plaintiff and is estopped to deny coverage. Plaintiff cross-appeals from the JNOV. Although defendants Salem Insurance and Brouse are not liable under the judgment against Guaranty, they make cross-assignments of error in the event that we reverse that judgment. On appeal and on cross-appeals, we reverse.

All the claims arise from Guaranty's denial of automobile insurance coverage of plaintiff. Salem Insurance is an agent for various insurance companies, including Guaranty. Plaintiff purchased his automobile insurance through Salem Insurance. On April 11, 1990, plaintiff and defendant Brouse, one of Salem Insurance's representatives,[2] met and discussed with plaintiff changing his automobile insurance carrier to Guaranty. At that meeting, plaintiff contends that Brouse agreed to substitute Guaranty as plaintiff's insurer and entered into an oral binder of coverage on behalf of Guaranty. Guaranty subsequently issued a written policy on May 9, 1990, which provided insurance from April 17, 1990, through June 12, 1990. On June 15, 1990, plaintiff was in an automobile accident. Later, he filed an accident claim with Guaranty, which was denied.

As a result of the denial, plaintiff filed this action, alleging that Guaranty was liable under the oral binder or, in

---

[1] In his amended complaint on which the case was tried, plaintiff alleged five claims. The first claim is against all defendants and alleged that Brouse was negligent and that that negligence is imputed to Salem Insurance Agency (Salem Insurance) and Guaranty under the doctrine of *respondeat superior*. The remaining claims are made against Guaranty only. The second claim is based on the theory of breach of an insurance agreement. The third claim alleges that Guaranty is estopped from denying coverage based on the representations of Brouse. Plaintiff withdrew the fourth claim at the end of the trial. The fifth claim alleges that Guaranty was negligent in the manner in which it notified plaintiff of the change in the policy term.

[2] Defendant Bret Brouse and his brother, Gordon Brouse, are the sole shareholders of Agency.

the alternative, that Brouse, Salem Insurance and Guaranty were liable for failing to procure coverage. Plaintiff does not seek to recover under the written policy and contends that the written policy is of no legal significance because it did not conform to the oral binder. He alleges, in part:

"7

"Defendant Brouse represented to Plaintiff that a two-month premium was due in the amount of $224 for said policy and that upon payment of the premium the insurance coverage would become effective on April 17, 1990 and terminate on June 17, 1990. Defendant Brouse accepted a check from Plaintiff in the amount of $224 for said coverage.

"8

"The actual premium claimed to be required by [Guaranty] for said period was approximately $20.00 greater than the quoted $224.00.

"9

"On or about May 8, 1990, [Guaranty] issued a policy of insurance for a period commencing on April 17, 1990 and terminating on June 12, 1990, which policy conformed in all other ways to the representations of Defendant Brouse.

"10

"On June 15, 1990, Plaintiff was involved in a two-vehicle accident * * *.

"11

"Plaintiff presented his various loss claims to Defendants. [Guaranty] denied that there was coverage in effect for the said vehicle on June 15, 1990, causing Plaintiff to sustain the damages alleged hereunder.

"* * * * *

"17

"As a result of the above-described Agreement between Brouse and Plaintiff, an oral binder between [Guaranty] and Plaintiff was established for the coverage described, Plaintiff has performed all obligations required of him and all other conditions precedent to [Guaranty's] performance under the contract of insurance have occurred. [Guaranty] has not paid for any of the covered losses sustained by Plaintiff."

In its answer, Guaranty asserts:

"8.

"On or about April 11, 1990, plaintiff made application for a policy of automobile insurance with defendant. * * *

"9.

"On this application for insurance, appearing immediately above plaintiff's signature on its first page appeared [*sic*] the calculation for monthly premiums on his 1988 Chevrolet pickup and his 1985 Cadillac. This application showed the monthly premium for his first vehicle to be $55.00 and the monthly premium for his second vehicle to be $67.00. The premium for two months' coverage would have been $244.00.

"10.

"On this application, appearing immediately above plaintiff's signature on page two, plaintiff declared in relevant part:

" 'I understand that this insurance *is effective only if a check or money order for the total premium accompanies this application*, and that my insurance protection will be null and void if the check(s) or money order(s) isn't honored by the bank or organization it's drawn on. In this case, I agree that the coverage this payment applies to never went into effect and that you were never bound to pay any claim under it.'

"11.

"On this application, appearing immediately above plaintiff's signature on page two, plaintiff declared in relevant part:

" 'I agree that *my policy may be subject to adjustment in premium or policy term as a result of* my motor vehicle report or other underwriting factors, including, but not limited to *the failure of the agent to comply with company's rules and rates.*'

"12.

"On or about May 9, 1990, defendant sent and plaintiff received a declaration page for his policy which advised him that:

" 'This policy is being issued for 56 days only. This term is based on the $224.00 premium which was submitted.'

"This declaration page advised plaintiff that the policy term began at 12:01 a.m. April 17, 1990 and terminated on 12:01 a.m. June 12, 1990. * * *

"13.

"On or about May 23, 1990, defendant sent and plaintiff received a notice advising him that:

" 'Providing insurance protection to you is important and is dependent upon you making your payments on time. Your current coverage expires on 12:01 a.m. 06/12/90. To continue your coverage, your payment must be received before the indicated date due.'

"The notice advised that, if renewed, the policy would continue in effect from June 12, 1990 to August 12, 1990, upon payment of a two month premium of $242.00. * * *

"14.

"Notwithstanding these notices, plaintiff failed or refused to pay the premium necessary to continue his coverage beyond June 12, 1990.

"15.

"By reason of plaintiff's failure to pay the premium requested and the notice to him that the policy would expire, his insurance coverage terminated at 12:01 a.m. June 12, 1990." (Emphasis supplied.)

Before trial, plaintiff moved to exclude evidence of the policy application based on ORS 742.016(1), which provides:

"Except as provided in ORS 742.043, every contract of insurance shall be construed according to the terms and conditions of the policy. *When the contract is made pursuant to a written application therefor*, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. *Any application that is not so delivered to the insured shall not be a part of the insurance policy and the insurer shall be precluded from introducing such application as evidence in any action based upon or involving the policy.* Any oral representations by the insured that are not included in an application shall not be a part of the insurance policy and the insurer shall be precluded from introducing such representations as evidence in any action based upon or involving the policy." (Emphasis supplied.)

The trial court granted plaintiff's motion.

In its first assignment, Guaranty assigns as error the trial court's ruling to exclude evidence of the application.[3] It argues that the application provides that the policy was subject to adjustment in policy terms and that the policy, when issued, notified plaintiff that such an adjustment had been made. The policy's declaration page said, "Note: this policy is being issued for 56 days only. This term is based on the $224 premium which was submitted." Guaranty says:

> "Plaintiff cannot avoid the terms of his application for insurance. He must take his written application as part and parcel of the [sic] whatever else he claims the oral or temporary contract of insurance to be. The application for insurance included provision [sic] which precludes the coverage plaintiff now claims." (Citation omitted.)

Plaintiff responds that his second claim is based on an oral binder under ORS 742.043, that the application for insurance was not part of the oral binder, and that regardless, ORS 742.016 prohibits the introduction of the application for insurance into evidence because it was not attached to any policy that was issued. Thus, according to plaintiff's argument, Guaranty's policy based on the oral binder gave plaintiff 60 days' coverage from April 17, 1990, to June 17, 1990, and Guaranty breached its policy when it denied coverage for an accident that happened on June 15.

Oral binders for insurance are enforceable under ORS 742.043, which provides, in part:

> "(1)  Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.
>
> "(2)  Except as provided in subsection (3) of this section and ORS 746.195, within 90 days after issue of a binder a policy shall be issued in lieu thereof, including within its terms the identical insurance bound under the binder and the premium therefor."

---

[3] Evidence of the application was excluded as to all the claims, but the arguments regarding its admissibility center on plaintiff's second claim.

In *Hansen v. Western Home Ins. Co.*, 89 Or App 68, 747 P2d 1007 (1987), we held that *former* ORS 743.075(2) (*renumbered* ORS 742.043(2) in 1989), "requires an insurer to issue a written policy within 90 days after issuance of a binder and that the policy include the identical coverage of the binder." 89 Or App at 71-72. We said that the statute puts an affirmative burden on the insurer to provide a policy that conforms to the binder.

In this case, plaintiff contends that the binder was for 60 days and the policy provided coverage for only 56 days. Therefore, under the statute, because the policy did not conform to the binder, the binder controls until a policy with the identical coverage issued. Thus, the issues for the jury included whether the binder agreement incorporated the terms of the application. If it did, and the jury found that the policy issued by Guaranty conformed to the terms of the binder, then coverage expired before the accident. If the binder did not include the application, and the jury believed that the binder was for 60 days, then the binder was in effect on the date of the accident.

■       In that light, we turn to the trial court's ruling on the admissibility of the application under ORS 742.016. Guaranty argues that ORS 742.016 is inapplicable to this case, because its provisions apply only when there is a claim made by an insurer that the insured has made misrepresentations on the application and the insurer is denying coverage because of those misrepresentations. Plaintiff responds that, on its face, the statute unambiguously applies to the circumstances of this case.

"In interpreting a statute, [our] task is to discern the intent of the legislature," and we begin by examining "both the text and context of the statute." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). "If the legislature's intent is clear from the above-described inquiry into text and context, further inquiry is unnecessary." 317 Or at 611.

We conclude that the legislature's intent is clear from the language of the statute. ORS 742.016 is triggered when a policy issues "pursuant to a written application therefor." Here, plaintiff's claim for coverage is not based on

an insurance agreement made pursuant to the written application. Rather, it is predicated on an oral agreement which, according to plaintiff, did not include the written application. Plaintiff cannot invoke the protection of a statute that is inapplicable to his theory of the case, and the trial court erred when it excluded the application from evidence.[4]

◾ Guaranty also assigns as error the trial court's denial of its motion for directed verdict on the claim for breach of the policy. It argues that if the application is admissible, the claim fails as a matter of law, because the application states that the coverage period was "subject to adjustment for short premiums." That argument assumes that the jury would find that the application was part of the binder agreement. Based on the evidentiary record, we cannot say that reasonable persons could draw only that inference regarding what was included in the terms of the binder. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1987). The trial court did not err in that respect. The judgment on the claim for breach of the insurance agreement is reversed.

In another assignment, Guaranty argues that the trial court erred in denying its motion for a directed verdict on plaintiff's implied contract claim, in which he alleges that Guaranty is estopped from denying coverage because of Brouse's representations to plaintiff. In that claim, plaintiff alleges:

"21

"Plaintiff reasonably relied upon the specific representations concerning coverage made by Defendant Brouse on behalf of Guaranty National; these representations were inconsistent with the express terms of the policy actually issued. Guaranty National is, therefore, estopped from denying that the represented coverage exists."

◾ Although equitable estoppel is not in itself the basis for a claim, it may be a method of proving the necessary facts to establish a claim. *Bromwell v. Rowland*, 123 Or 33, 44, 261 P 57 (1927); *see also Gillman v. Emel*, 89 Or App 153, 156-57, 747 P2d 390 (1987). Apparently, plaintiff is alleging that the parties entered into an implied insurance agreement in which

---

[4] The application is relevant to the negligence claims as well, and ORS 742.016 does not operate to exclude it as evidence on the retrial of those claims.

plaintiff relied on a promise made on behalf of Guaranty to furnish insurance coverage for 60 days for the premium of $224.

Guaranty contends that, based on the holding in *DeJonge v. Mutual of Enumclaw*, 315 Or 237, 843 P2d 914 (1992), plaintiff cannot assert an estoppel to expand the terms of the insurance agreement. Plaintiff responds that the present case does not involve an expansion of coverage of the written policy, but rather a situation "where the oral contract gave more coverage than the written policy * * *." Plaintiff's theory of estoppel differs from the facts in *DeJonge* in one significant manner. In *DeJonge*, the plaintiffs' theory was based on a written policy, not an oral representation. There, the plaintiff raised an estoppel to prevent the insured from asserting terms contained in a written policy.

This case is more like *Paulson v. Western Life Insurance Co.*, 292 Or 38, 636 P2d 935 (1981), where, because of the employer's mistaken representations regarding when it was necessary to enroll to receive the employer's group insurance benefits, a new employee was not covered for the expenses of his daughter's illness. The plaintiff's claim occurred after the insurer's deadline for enrollment without proof of insurability, but before the erroneous deadline specified by the employer. Obviously, no written policy had issued at the time of the claim. Had there been timely enrollment, coverage would have been automatic. The court noted that "there are limitations as to the extent to which insurance coverage can be *created* by estoppel." 292 Or at 51. (Emphasis in original.) However, it held that the insurer could be estopped from denying the existence of coverage because of the representations of the employer.

In *DeJonge*, the claim for coverage under the written policy, if allowed, would have expanded terms of coverage that had been in existence for three years before the incident giving rise to the claim occurred. The court rejected the plaintiff's argument and distinguished *Paulson*.[5] Thus, the

---

[5] The court said:

"*Paulson v. Western Life Insurance Co., supra,* concerned when an individual had to apply for existing group insurance of a conceded scope, not what the scope of the available coverage would be. The court emphasized that there was 'no question that [the employee] would have received [the coverage] had he

plaintiff in *Paulson* argued as plaintiff argues here: the representations and the insured's reliance on them created the insurance contract and estopped the insurer from denying coverage. Accordingly, we conclude that the holding in *DeJonge* does not control. Inasmuch as plaintiff offered evidence on all of the elements of an estoppel,[6] the trial court did not err in denying Guaranty's motion for a directed verdict on the implied contract claim. Nonetheless, evidence of the application is relevant to the issue of what representations were made by Brouse and, therefore, for the reasons expressed above, the judgment on the implied contract claim must be reversed.

■    We turn to plaintiff's cross-appeal, in which he assigns as error the trial court's granting of a JNOV on plaintiff's claims of negligence. The trial court granted JNOV because it reasoned that recovery of damages on the theories of breach of the insurance agreement and estoppel would be duplicative of the recovery of damages on the negligence claims. In the light of our disposition of plaintiff's claims for breach of an insurance agreement, the basis for the court's ruling no longer exists. Therefore, the judgments in favor of defendants on plaintiff's negligence claims are reversed.

■    Nevertheless, Guaranty argues that it is entitled to judgment on the fifth claim of negligence as a matter of law

---

enrolled within 31 days.' 292 Or at 52. '[T]he plaintiff was entitled to virtually automatic coverage without proof of insurability if application was made within 31 days and * * * but for [the employer's] statement such coverage would have been in effect at the time the loss occurred.' The court acknowledged that the defendant was 'correct in the assertion that there are limitations as to the extent to which insurance coverage can be created by estoppel,' but went on to explain that this was not such a case. In other words, the court's discussion indicated a belief that estoppel was not being used to create coverage in the sense of enlarging the insuring clauses of the group policy or denying effect to an exclusion. Neither the scope of coverage nor any express exclusion from coverage was at issue." 315 Or at 244. (Some citations omitted.)

[6] In order to prove an estoppel, there must be evidence

"from which the trier of fact could find that (1) a false representation (albeit an innocent one) was made (2) by someone having knowledge of the facts to (3) one who was ignorant of the truth, (4) that the statement was made with the intention that it be acted upon by the plaintiff and (5) that plaintiff acted upon it." *Paulson v. Western Life Insurance Co., supra*, 292 Or at 52.

and, therefore, the trial court erred when it denied Guaranty's motion for a directed verdict on that claim.[7] Guaranty argues that no reasonable juror could find that its procedures in notifying plaintiff of the duration of his coverage were carried out in a negligent manner. In particular, it argues:

"According to the only witness on the subject, Guaranty National did more than any other insurer to tell its insureds of differences between proposed terms in the application and final terms in a policy."

The "only witness" was an insurance agent, who testified about insurance practices of those insurance companies with whom she personally worked. Guaranty did not offer the testimony as proof of an industry standard. Other uncontradicted evidence showed that Guaranty notified plaintiff of the policy's shorter period by a sentence on the declarations page and a letter in a plain envelope that arrived near the end of the policy period. Plaintiff, mistaking the envelope for a bill that he believed was due on June 17, 1990, did not open it before the accident. The jury was not required to accept the testimony of Guaranty's witness and was entitled to draw more than one inference from all the evidence. Therefore, the trial court did not err in denying the motion for a directed verdict on the fifth claim.

█    In a cross-assignment of error, defendants Salem Insurance and Brouse raise an issue that may arise on retrial. Also, on appeal, Guaranty raises the same issue: whether plaintiff is entitled to recover damages for emotional distress under his claims of negligence.

Plaintiff alleges:

"15

"As a direct and proximate result of Defendant Brouse's negligence and the consequences thereof, Plaintiff sustained noneconomic damages[8] consisting of inconvenience, emotional distress, humiliation, and interference with his normal and usual activities in the amount of $50,000.00."

---

[7] Guaranty's motion for a directed verdict is directed only to the fifth claim, in which plaintiff alleged that Guaranty was negligent in its method of notifying plaintiff of the change in policy term.

[8] We do not decide whether the term "noneconomic damages" is applicable to the claims made in this case. See ORS 18.560, regarding the measure of damages for "bodily injury."

Guaranty and Salem Insurance argue that the measure of damage in this case is solely economic and, under Oregon law, damages for emotional distress are not available absent an accompanying physical injury or an injury to another legally protected interest. *See Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 559, 652 P2d 318 (1982). Plaintiff contends that his emotional distress arose from the loss of his driver's license, which he argues is a legally protected interest that was injured as a result of defendant's conduct. Therefore, he argues that he has met the test to recover damages for emotional distress.

Contrary to plaintiff's argument, we have never said that the mere existence of a legally protected interest is sufficient to allow a plaintiff to recover emotional distress damages in the absence of a physical injury. In *Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 652 P2d 852 (1982), we said that there were four instances in which a plaintiff may recover for emotional distress absent a physical injury:

> "(1)  certain intentional torts, including trespass to land, intentional interference with contractual relations, conversion, racial discrimination; (2) private nuisance; (3) invasion of privacy; and (4) miscellaneous cases: unlawful disinterment of spouse's remains, infringement of right to child custody resulting from attorney's failure to deliver client's passport into 'escrow' to prevent client from taking child out of the country." 60 Or App at 73-74. (Citations omitted.)

In *Meyer*, the plaintiff sued the defendant for negligently installing insulation that was in direct contact with a wood stove flue pipe, thereby causing a fire on the plaintiff's property. The plaintiff asked for $1,200 in property damage, and $5,000 for " 'inconvenience, annoyance and discomfort,' which [he] characterize[d] as mental distress." 60 Or App at 72. In his appeal from the trial court's order striking the mental distress allegation, he argued that Oregon case law provides for damages for emotional distress when the damage is "a direct, natural and proximate result" of the wrongful act, *Hinish v. Meier & Frank Co.*, 166 Or 482, 506, 113 P2d 438 (1941), or the "common and predictable" result of the defendant's conduct. *Mooney v. Johnson Cattle*, 291 Or 709, 718, 634 P2d 1333 (1981). In *Meyer v. 4-D Insulation Co., Inc., supra*, we said:

"It is difficult to imagine a circumstance in which damage to any property does not directly, naturally and predictably result in some emotional upset. Unless some other line is drawn, as we believe there must be as a policy matter, neither the quality of a defendant's conduct nor the predictability of distress as a result of property damage alone or together form a basis for an award of compensatory damages for emotional distress. Rather, it is the kind of interest invaded that, as a policy matter, is believed to be of sufficient importance to merit protection from emotional impact, that is critical. Regardless of the language used to describe when such damages are recoverable, the Oregon cases allowing such damages all involve an interference with the person beyond the inconvenience and distress always resulting from interference with property." 60 Or App at 74-75.

We concluded that the plaintiff's property interest was not of sufficient importance to merit that protection.

In *Hilt v. Bernstein*, 75 Or App 502, 707 P2d 88 (1985), we considered another claim for emotional distress based on a lawyer's negligence in counseling his client in a dissolution of marriage proceeding, which resulted in the foreclosure of and loss of the client's equity in her home. We said:

"The critical inquiry becomes whether the kind of interest invaded is of sufficient importance as a matter of policy to merit protection from emotional impact. *See Meyer v. 4-D Insulation Co., Inc., supra,* 60 Or App at 74-75. In comparison with the interests for which damages for emotional distress have been recognized, it is not. In *Hovis v. City of Burns,* [243 Or 607, 415 P2d 29 (1966)], the interest invaded was the personal right of the survivor of a deceased to have the deceased's remains undisturbed; in *McEvoy v. Helikson,* [277 Or 781, 562 P2d 540 (1977)], the interest invaded was the right to a parent-child relationship. The right to share equitably in a marital asset is not of comparable magnitude." 75 Or App at 515.

Likewise, in *Flowers v. Bank of America*, 67 Or App 791, 679 P2d 1385 (1984), we considered a claim for emotional distress based on the defendant's negligent infringement of the plaintiff's right to have his credit card honored. We said:

"The interest that Bank allegedly carelessly invaded was plaintiff's contractual right to have the credit card honored.

The question is whether that careless invasion is, as a matter of policy, of sufficient importance to merit protection by an award of damages if the only result is emotional distress. We hold that it is not." 67 Or App at 794.

In each of those cases, we contrasted the alleged invaded interest with the invaded interests that have been found to merit a claim of emotional distress. None of the former involved an interference with the person beyond the inconvenience and distress typically associated with interference with property interests. In each case, as a matter of policy, we said that the infringement of those particular property interests was not sufficient to allow a claim for emotional distress. Here, plaintiff does not allege an intentional tort, a private nuisance or an invasion of privacy. His entitlement to damages for emotional distress is based on an invasion of a legally protected interest. Assuming without deciding that an invasion of a legally protected interest has occurred, we hold that the invasion is not of sufficient importance to warrant the award of damages for emotional distress for the same reason; the invaded interest is chiefly an economic one. The trial court erred in refusing to strike plaintiff's claim for damages arising from emotional distress.

The remaining assignments of errors made by the parties will not likely arise on retrial, and we decline to address them. In summary, we hold that the trial court erred in refusing to admit the insurance application into evidence and in refusing to strike the claims for damages for emotional distress from plaintiff's claims for negligence.

Reversed and remanded on appeal and on cross-appeal.