Argued and submitted September 24, 1999, affirmed May 17, 2000

Stanley D. and Harrier A. STEVENS,
husband and wife,
*Appellants,*

*v.*

FIRST INTERSTATE BANK OF CALIFORNIA,
*Respondent,*

*and*

FIRST INTERSTATE BANK OF OREGON
and Stanley C. Stevenson,
*Defendants.*

(9704-02891; CA A102117)

999 P2d 551

Phil Goldsmith argued the cause for appellants. With him on the briefs was Cecil B. Strange.

Thomas W. Sondag argued the cause for respondent. With him on the brief was Lane Powell Spears Lubersky LLP.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

Wollheim, J., dissenting.

## HASELTON, J.

Plaintiffs appeal from a summary judgment dismissing their claim for "breach of confidentiality," which sought emotional distress damages against defendant, First Interstate Bank of California (FICAL). That claim arises from FICAL's alleged failure to protect from third-party misappropriation and wrongful use certain personal and credit information that plaintiffs had provided to their bank. We conclude that plaintiffs' claim is not properly for "breach of confidentiality" and that, to the extent that plaintiffs' claim is properly characterized as one for negligent infliction of emotional distress, the relationship between plaintiffs, as depositors, and the defendant bank does not give rise to the sort of separate "legally protected interest" necessary to support such a claim. Accordingly, we affirm.

For purposes of summary judgment, the material facts are uncontroverted. Plaintiffs, husband and wife, maintained checking accounts with First Interstate Bank of Oregon (FIOR). In connection with those accounts, FIOR required plaintiffs to disclose to it certain private and confidential information, including social security numbers and dates of birth.

On June 27, 1994, FICAL, an affiliate of FIOR, hired Stanley C. Stevenson as a collector in its credit card department. Stevenson had a criminal conviction for grand theft. However, Stevenson lied and failed to disclose that conviction in completing FICAL's employment application, which specifically asked whether the applicant had ever been convicted of a criminal offense involving dishonesty or breach of trust. After Stevenson began work, FICAL, in accordance with bank policy and procedure, forwarded Stevenson's fingerprints to the FBI for a background check.

Between his hiring and early October 1994, Stevenson, through his job, had access to the shared customer database of FIOR and FICAL. Through that database, Stevenson gained access to plaintiff Stanley Stevens's private and confidential information. Stevenson used that information to procure numerous charge cards and loans.

On October 3, 1994, three months after Stevenson began working, FICAL received a report from the FBI that disclosed Stevenson's prior grand theft conviction. FICAL promptly suspended and then terminated Stevenson because of his access to records with the "potential for * * * finding information that's not appropriate."

As a consequence of Stevenson's misappropriation and misuse of Stanley Stevens's "credit identity" in fraudulent credit-related transactions, plaintiffs were subject to collection calls for debts that they did not owe. They had to expend considerable effort to clear and correct their credit record and reputation. Although plaintiffs did not incur any monetary obligation as a result of Stevenson's activities, they suffered anxiety, embarrassment, and distress.

In April 1997, plaintiffs filed this action, naming as defendants Stevenson, FICAL, and FIOR. In February 1998, plaintiffs filed their operative second amended complaint against Stevenson and FICAL.[1] That complaint did *not* allege that Stevenson had acted within the course and scope of his employment with FICAL in misappropriating and disclosing plaintiffs' personal and credit information. Rather, the complaint alleged that Stevenson, individually, had committed a trespass[2] and that FICAL was liable for "breach of confidentiality":

"15. FICA[L] had a duty to protect the private and confidential information concerning plaintiffs that was contained in its computer data base of customer information.

"16. FICA[L] breached that duty by *hiring* Stevenson *and either*:

---

[1] After the parties stipulated that FICAL "owed the plaintiffs the same duty of confidentiality as did" FIOR, plaintiffs agreed to dismiss their claim against FIOR without prejudice.

[2] The complaint alleged:

"19. Beginning sometime in 1994 and continuing until at least 1996, defendant Stevenson embarked on a course of continuing conduct using private and confidential customer information concerning plaintiffs in FICAL's possession to obtain money, goods and services at the expense of plaintiffs' credit histories by appropriating the identity of plaintiff Stanley Stevens through deceit."

"(a). *Allowing him access* to its computer data base of customer information, including the private and confidential information which plaintiffs were required to disclose to [the bank], *without first having conducted a reasonable investigation of Stevenson's criminal records history or*

"(b). *Not adequately protecting such private and confidential information from being accessed by unauthorized employees such as Stevenson.*" (Emphasis added.)

Plaintiffs alleged that they had suffered emotional distress and anxiety and, consequently, sought to recover compensatory damages of $60,000 for Harriett Stevens and $90,000 for Stanley Stevens.

Two related aspects of plaintiffs' claims are central to our analysis and bear immediate emphasis. *First,* plaintiffs' "breach of confidentiality" claim against FICAL alleges *direct* liability, not *vicarious* liability for Stevenson's conduct. *Second,* and concomitantly, plaintiffs' claim against FICAL is *not* based on Stevenson's *use and disclosure* of their information, but on FICAL's *failure* to *protect* that information from wrongful appropriation by third parties.

FICAL answered and, on February 13, 1998, moved for summary judgment against plaintiffs' claim for breach of confidentiality. Before the court ruled on that motion, plaintiffs moved for leave to amend their complaint to seek punitive damages from FICAL for breach of confidentiality. That matter was deferred pending the disposition of the summary judgment motion.

In March 1998, the trial court granted FICAL's summary judgment motion, concluding that plaintiffs did not have a "claim at all for breach of confidentiality." The court explained:

"It doesn't make any sense to me; okay? * * * Here's what I'm saying: The bank has a contractual duty of confidentiality, as far as I'm concerned. * * * Now, if they are negligent, then they have some other duty. Part of negligence is a duty. But it isn't a duty to confidentiality, it's a duty to hire competent people who don't steal from their customers. That's the duty that you're saying they breached."

Alternatively, the court stated that, even if it had concluded that plaintiffs had stated a tort-based claim for breach of confidentiality, it would have granted FICAL's motion on grounds that emotional distress damages were insufficient to sustain plaintiffs' claim. Specifically, the court stated that it would have granted FICAL's motion on grounds that "the kind of special relationship that creates [liability for emotional distress damages], or the kind of societal harm" necessary to recover solely for emotional distress damages was not present. Accordingly, the court entered an ORCP 67 B judgment for FICAL. That, in turn, rendered moot plaintiffs' motion to amend to seek punitive damages. This appeal followed.[3]

On appeal, plaintiffs raise two assignments of error: (1) The trial court erred in concluding that plaintiffs' claim against FICAL was insufficient in that it failed to state a claim for breach of confidentiality and, alternatively, that plaintiffs' claim, even if otherwise sufficient, did not support recovery of emotional distress damages only. (2) The court erred in denying plaintiffs' motion to amend to seek punitive damages. As described below, we affirm the trial court with respect to the first assignment of error. That disposition obviates the second assignment.

Before addressing the merits, we clarify and emphasize the issue presented here. In that regard, it is useful to identify what this case is *not* about. As framed by plaintiffs' pleadings and the parties' summary judgment submissions, this case does *not* involve: (a) a bank's (or its agent's) affirmative disclosure or misappropriation of a customer's personal or credit information; (b) a bank's failure to protect information provided to it as a trustee, in the course of a lending relationship, or in reliance on, and pursuant to, an express promise of protection; or (c) a claim for damages other than emotional distress damages. Rather, the issue presented here is precise: Where a third party misappropriates personal or credit information that a depositor had provided to a bank, and that misappropriation is the result of the bank's failure to adequately protect the information from

---

[3] After allowing FICAL's summary judgment motion, the court entered a default judgment against Stevenson.

such misappropriation, is the bank liable for the depositor's resulting emotional distress?

With the issue properly so described, it is apparent that—whatever plaintiffs' claim against FICAL may be—it is not a claim for "breach of confidentiality." The gravamen of the tort of breach of confidentiality,[4] in Oregon and nationally, is the *affirmative disclosure* of information by a person to whom the confidential information has been entrusted. *See Humphers v. First Interstate Bank,* 298 Or 706, 717-19, 696 P2d 527 (1985); Note, *Breach of Confidence: An Emerging Tort,* 82 Colum L Rev 1429 (1982). As noted, this case is not about FICAL's affirmative disclosure of information. Rather, it is about the bank's alleged failure to protect information provided to it by a depositor from misappropriation by a bank employee acting outside the scope of his employment. Plaintiffs identify no authority—and we have found none—that expands the tort to impose liability where the defendant has not affirmatively disclosed the "entrusted" or "confidential" information. We decline to do so. *See Humphers,* 298 Or at 718 (referring to a breach of confidence as the "legal duty not to speak").

That does not, however, end our inquiry. Plaintiffs' claim, even if misdenominated, could, nevertheless, withstand summary judgment if it could otherwise support the recovery of emotional distress damages only. *Cf. Curtis v. MRI Imaging Services II,* 327 Or 9, 13-14, 956 P2d 960 (1998) ("characterization of the claim does not relieve [the] court of its responsibility to explain why purely psychological harm might be actionable"). As the trial court observed, plaintiffs' claim is, at least most obviously, one for common-law negligence—*i.e.,* negligent hiring of Stevenson. Accordingly, in the absence of physical injury, to recover emotional distress damages only, plaintiffs must demonstrate that their relationship with FIOR/FICAL gave rise to some distinct "legally protected interest" beyond liability grounded in the general obligation to "take reasonable care not to cause a risk of * * *

---

[1] Many authorities refer to the tort as "breach of confidence." *See Humphers,* 298 Or at 717 (referring to the tort as "breach of confidence"); Note, *Breach of Confidence: An Emerging Tort,* 82 Colum L Rev 1429 (1982). However, plaintiffs' denominate their claim as one for "breach of confidentiality," and, for clarity, we use that same terminology.

foreseeable * * * harm" to plaintiffs. *Nearing v. Weaver,* 295 Or 702, 708, 670 P2d 137 (1983); *see also Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987).

■ Plaintiffs contend that the relationship between a bank and its depositors imposes a duty on the bank to protect information that transcends the general common-law duty to exercise reasonable care to prevent foreseeable harm. We disagree. The relationship between plaintiffs, as depositors, and their bank was not of the sort that Oregon courts have found gives rise to the requisite distinct "legally protected interest." *See Curtis v. MRI Imaging Services II,* 148 Or App 607, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9, 956 P2d 960 (1998) (examining those relationships giving rise to a duty that transcends generic, common-law foreseeability).

A depositor-bank relationship is a highly regulated, arm's-length commercial relationship, in which the bank's ability to act *vis-a-vis* its depositors is expressly limited. *See generally* ORS ch 74. In that respect, the depositor-bank relationship differs materially from trustee-trustor or lender-borrower relationships in which a party may entrust confidential information to the bank for a particular purpose and in which that party must rely on the bank's exercise of independent professional judgment to achieve an agreed purpose. *See generally Conway v. Pacific University,* 324 Or 231, 240, 924 P2d 818 (1996).[5] Rather, the depositor-bank relationship is, in our view, more analogous to a merchant-customer relationship in which the customer, in transacting a credit card or other noncash purchase, provides certain information to the merchant. There, as here, the relationship is at arm's-length, to achieve a specific economic end, and does not

---

[5] In *Conway,* the court, in assessing the sorts of relationships in which negligent misrepresentation are actionable, observed:

"Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution." 324 Or at 240 (emphasis in original).

require the merchant to exercise independent judgment on the customer's behalf. *See Transamerica Ins. Co. v. U.S. Nat'l Bank,* 276 Or 945, 956 n 11, 558 P2d 328 (1976) ("A bank deposit creates a debtor-creditor relationship; the incidents of that relationship are provided by law (although they may, within limits, be varied by agreement.)" (citations omitted)); *Dahl & Penne, Inc. v. State Bank of Portland,* 110 Or 68, 72, 222 P 1090 (1924) (relationship between bank and depositor is that of "debtor and creditor": "The contract between the parties is purely legal, and has no element of a trust in it.").[6]

Plaintiffs argue, nevertheless, that *Banaitis v. Mitsubishi Bank, Ltd.,* 129 Or App 371, 377-78, 879 P2d 1288 (1994), *rev dismissed* 321 Or 511, 900 P2d 508 (1995), recognizes—and, indeed, is premised on—a distinct, legally enforceable obligation to protect bank customer information. Plaintiffs' reading of *Banaitis* is overbroad.

*Banaitis* was a wrongful discharge case. There, the plaintiff had worked as a vice-president of the Bank of California, which was acquired by defendant, Mitsubishi. Because Mitsubishi Group companies competed internationally with some of the bank's customers, those customers demanded, and received, assurances that their financial information would not be disclosed to Mitsubishi. A Mitsubishi manager subsequently requested that the plaintiff disclose information about one of the bank's customers who had requested assurances of confidentiality. When the plaintiff refused to disclose that information, he was ultimately forced to resign. The plaintiff sued the Bank of California for wrongful discharge and Mitsubishi for tortious interference with a contractual relationship. The jury awarded compensatory and punitive damages against both defendants, and we sustained that verdict.

In reviewing the sufficiency of the wrongful discharge claim, we agreed with the plaintiff that his discharge implicated a societal obligation or public policy against a

---

[6] *See also New Amsterdam C. Co. v. Robertson, et al,* 129 Or 663, 668, 278 P 963 (1929) (relationship between bank and depositor is that of debtor-creditor); *Verrell v. First Nat. Bank,* 80 Or 550, 556, 157 P 813 (1916) (same).

bank's disclosure of customers' confidential financial information. In particular, we reviewed "state and federal statutes that generally protect business information from discovery by or disclosure to the public or to government agencies":

"The Federal Right to Financial Privacy Act of 1978, 12 USC § 3401 *et seq*, prohibits, with certain exceptions, the disclosure of a customer's records by a financial institution to a government authority without the customer's consent. The Federal Freedom of Information Act, 5 USC § 552, similarly exempts from disclosure by public agencies any 'commercial or financial information' that is privileged or confidential. 5 USC § 552(b)(4). * * *

"* * * * *

"Various criminal statutes reflect a public interest in protecting the confidentiality of commercial financial records. ORS 165.095(1) provides that a person who 'misapplies' property entrusted to a financial institution commits a crime. Removal or disclosure of a bank's files or other property is a Class C felony. ORS 708.715." *Banaitis,* 129 Or App at 378 (footnote omitted).

We also canvassed common-law authority from other jurisdictions:

"At common law, the courts in a number of jurisdictions have recognized a bank's duty not to divulge to a third party, without the customer's consent, any information relating to the customer acquired through the keeping of the customer's account. As the Idaho Supreme Court said in *Peterson v. Idaho First National Bank,* 83 Idaho 578, 367 P2d 284 (1961):

" 'It is inconceivable that a bank would at any time consider itself at liberty to disclose the intimate details of its depositors' accounts. Inviolate secrecy is one of the inherent and fundamental precepts of the relationship of the bank and its customers or depositors.' 83 Idaho at 588, [367 P2d 284].

"Consistent with that rule, BanCal's own internal policy prohibits the disclosure of confidential customer financial information." *Banaitis,* 129 Or App at 379 (citations omitted).

Based on our review of those authorities, we concluded:

> "Those statutory provisions, rules and common law principles reflect a common concern for the protection of valuable commercial financial information, particularly when that information has been entrusted to a bank. Permitting a bank to discharge with impunity its employee for refusing to disclose confidential customer financial information would violate that public policy and compromise the protections that the statutes, rules and common law duties were designed to afford." *Id.*

*Banaitis* itself and all the authorities on which it relies pertain to a bank's obligation of *nondisclosure*. Neither *Banaitis* nor those authorities recognize that the depositor-bank relationship gives rise to a distinct "legally protected interest," transcending a common-law duty of due care, to protect depositors' financial information from tortious misappropriation by third parties.[7] In short, *Banaitis* corroborates the availability of a breach of confidentiality claim when a bank affirmatively discloses a customer's financial information without the customer's consent, but it does not support a free-standing claim for emotional distress damages flowing from negligent hiring.

Finally, and contrary to the dissent, *Edwards v. Talent Irrigation District*, 280 Or 307, 309, 570 P2d 1169 (1977), and *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972), do not compel reversal. Plaintiffs' pleadings do not allege that, as in *Macca* and *Edwards*, defendant's conduct resulted in an invasion of any right to enjoy their

---

[7] Plaintiffs also point to 12 USC section 1829, as evincing the requisite distinct "legally protected interest." That statute provides, in part:

"(1) * * * Except with the prior written consent of the [Federal Deposit Insurance Corporation]—

"(A) any person who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering * * *, may not—

"(I) become, or continue as, an institution-affiliated party with respect to any institution[.]" 12 USC § 1829.

Nothing in the statute indicates that it exists for the protection of the banking public generally, as opposed to the FDIC. Nor does the statute—unlike some of those discussed in *Banaitis*—refer specifically to customer account information.

property without unreasonable interference.[8] Nor did plaintiffs make such an argument to the trial court or in their briefs on appeal. Thus, plaintiffs here *never* contended that this case somehow implicates a separate "legally protected interest" in a property law-based right of use and enjoyment. *See State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 480 n 6, 994 P2d 147 (1999) ("[A]lthough it is axiomatic that we may affirm on grounds not argued to the trial court, there is no authority for the proposition that, without invoking 'plain error,' we can *reverse* the trial court on grounds not argued to it." (emphasis in original)).[9]

The trial court properly dismissed plaintiffs' claim against FICAL.

Affirmed.

**WOLLHEIM, J.,** dissenting.

I agree with the majority that plaintiff does not present a claim for "breach of confidentiality." However, because the majority's analysis of the basis for which emotional distress damages may be awarded is incomplete, I respectfully

---

[8] For example, in *Edwards*, the court observed:

"The testimony in this case clearly reveals that the mental anguish for which plaintiffs recovered was the direct result of their concern for the damage to their property caused by defendant's negligence and their attempts to minimize that damage. They were anguished over the loss of the use of their laundry and bath facilities and the necessity of spending hours attempting to drain their land, and for other concerns caused by the entry of the water." 280 Or at 310.

[9] We note, particularly, that the scope and content of *Macca*'s holding remains unsettled. As the court observed in *Edwards*:

"Although we hold in this case that emotional distress damages may be recovered in an action for nuisance, we emphasize that our holding is limited to this particular species of case. The law involving recovery for emotional distress generally is confused and perhaps in need of rethinking by the courts. We have concluded, however, that this case does not provide a proper vehicle for reconsideration of the rules governing recovery for this type of injury." 280 Or at 310 n 4.

*See also Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 77, 652 P2d 852 (1987) (affirming trial court ruling striking allegations of mental distress resulting from negligently caused fire-related damages to plaintiff's home: "After *Macca* [the *Edwards*' footnotes], this explicit limitation clearly indicates that recovery of damages for mental distress is to be determined not according to the dictum in [*Macca*], but according to the specie of the case.") No case since *Macca* and *Meyer* has afforded further guidance.

dissent. I would hold that defendant's actions infringed on plaintiffs' legally protected right to enjoy property without unreasonable interference and that plaintiffs have a claim for emotional damages. Accordingly, I would reverse.

Oregon has recognized common-law liability for purely emotional distress injuries in three situations:

> "First, where the defendant intended to inflict severe emotional distress. Second, where the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself. *Third, where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent.*" *Hammond v. Central Lane Communications Center*, 312 Or 17, 22-23, 816 P2d 593 (1991) (citations omitted; emphasis added).

Claims that fit into the legally protected interest situation are distinguishable from claims that fall into the other two in that "the right to damages for mental distress [is] predicated on the kind of interest invaded, rather than on a particular level of culpability." *Meyer v. 4-D Insulation Co., Inc.,* 60 Or App 70, 75, 652 P2d 852 (1982).

Recovery of emotional distress damages for infringement of a legally protected interest constitutes an exception to the usual rule that liability under ordinary negligence does not extend to "solely psychic or emotional injury" in the absence of any actual or threatened harm to the plaintiff. *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 558-59, 652 P2d 318 (1982). Even though recovery under a legally protected interest theory is an exception to the usual rule, it is neither a recent exception nor inconsistent with prior Oregon cases. *See Hinish v. Meier & Frank Co.,* 166 Or 482, 506, 113 P2d 438 (1941) ("But it is well settled that where the wrongful act constitutes an infringement of a legal right, mental suffering may be recovered * * *. Violation of the right of privacy is a wrong of that character."); *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 420 n 1, 495 P2d 1193 (1972) ("Allowing recovery for mental suffering and

anguish unaccompanied by physical injuries under the circumstances of the present case is in accord with previous decisions of this court.").

For plaintiffs to recover for an infringement of a legally protected interest, their claim must meet three conditions. First, the interest infringed must be a "legally protected interest." *Hilt v. Bernstein*, 75 Or App 502, 514-15, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986). Second, the interest must be "of sufficient importance as a matter of policy to merit protection from emotional impact." *Id.* at 515. Third, the plaintiff must have been directly injured by the defendant's actions. The defendant's liability is limited to only those parties immediately injured by the defendant's negligent actions and does not extend to individuals indirectly injured. *Norwest*, 293 Or at 569.

We have previously classified cases claiming purely emotional damages based on an infringement of a legally protected interest into four categories. Those are: (1) certain intentional torts such as trespass to land, conversion, racial discrimination and intentional interference with contractual relations; (2) private nuisance; (3) invasion of privacy; and (4) miscellaneous cases that include unlawful disinterment of spouse's remains and infringement of the right to child custody. *See Meyer,* 60 Or App at 73-74 (listing categories and citing relevant cases). The legally protected interest must arise "independently of the ordinary tort elements of a negligence claim." *Nearing v. Weaver*, 295 Or 702, 707, 670 P2d 137 (1983). As a consequence, Oregon courts have recognized, as independent claims, interests arising from any of several different sources including interests recognized by common law such as property interests, *Macca*, 262 Or at 417; interests arising from statutes, *Nearing*, 295 Or at 707, or from court orders, *McEvoy v. Helikson,* 277 Or 781, 789, 562 P2d 540 (1977), and interests arising from special relationships, *Curtis v. MRI Imaging Services II*, 148 Or App 607, 618, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9, 956 P2d 960 (1998).

Here is where I differ with the majority's analysis: the majority analyzes plaintiffs' independent legal interest as one that *must* arise from the relationship between plaintiffs

and defendant and then concludes that a special relationship does not exist. 167 Or App at 286-87. The majority's analysis ends there. I do not agree with the majority that the relationship between a bank and its customers is not a special relationship. However, it is not necessary to resolve that issue here because the majority fails to examine whether defendant's actions also infringed on a legally protected interest arising from common law and, therefore, the majority's analysis is incomplete. Defendant's actions did infringe on plaintiffs' legally protected interest arising from a common-law right to peacefully use and enjoy their property.

The Oregon Supreme Court has twice held that the right to peacefully use and enjoy property is a protected interest. In *Macca,* the defendant erroneously listed the plaintiffs' telephone number in the yellow pages directory as the after hours phone number for a florist shop. 262 Or at 415. As a consequence, plaintiffs received multiple phone calls over a period of months which, in turn, interfered with plaintiffs sleep and caused them increased anxiety. *Id.* at 417. The court held that the defendant's actions constituted a private nuisance because the repeated telephone calls infringed on the plaintiffs' right to enjoy property without unreasonable interference and that plaintiffs could recover emotional distress damages. *Id.* at 418. *See also Mark v. Dept. of Fish and Wildlife*, 158 Or App 355, 360, 974 P2d 716, *rev den* 329 Or 479 (1999) ("A private nuisance is an unreasonable nontrespassory interference with another's private use and enjoyment of land."). In *Edwards v. Talent Irrigation District*, 280 Or 307, 309, 570 P2d 1169 (1977), the defendant's negligent actions caused water from their irrigation ditch to flood the plaintiff's property. The court awarded the plaintiff damages for "mental anguish" as a result of the defendant's interference with the plaintiff's use and enjoyment of his property. *Id.* at 310. Although fact-matching can be a fool's errand, in this instance the type of intrusion suffered by plaintiffs (repeated telephone calls over a period of months) and the interest infringed (the right to peacefully use and enjoy one's property) are indistinguishable from the intrusion experienced in *Macca* and the interest protected in both *Macca* and *Edwards*. Defendant's actions created a private nuisance and

resulted in an infringement of plaintiffs' legally protected interest.

Because plaintiffs' infringed right falls into one of the four recognized categories of legally protected interests, this court must determine whether the interest invaded is of sufficient importance to warrant the award of damages for emotional distress. *Collver v. Salem Insurance Agency, Inc.,* 132 Or App 52, 65-66, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995). Again, *Macca* and *Edwards* hold that the right to peaceful use and enjoyment of one's property merits protection from emotional impact. *Macca,* 262 Or at 419-20; *Edwards,* 280 Or at 310. That conclusion is supported by *Meyer,* which concluded that, although the right to recover for emotional distress does not extend to every harm to property interests, infringements that amount to a private nuisance are sufficiently significant to warrant recovery for emotional distress damages. 60 Or App at 79-80.

The significance of the interest at issue before us would diminish if that interest were solely economic. This court has consistently held that solely economic interests do not merit an award of emotional damages. *See Collver,* 132 Or App at 66 (even if the right to a driver's license is a legally protected interest, it is primarily an economic interest and is not of sufficient importance to warrant award of emotional damages); *Hilt,* 75 Or App at 515 (the right to share equitably in marital assets is an economic interest); *Flowers v. Bank of America,* 67 Or App 791, 794, 679 P2d 1385, *rev den* 297 Or 601 (1984) (contractual right to have a credit card honored). Plaintiffs' interest here is in the peaceful use of their home and is not merely economic. Plaintiffs' interest merits protection.

Finally, plaintiffs were directly injured by defendant's actions. The harm plaintiffs suffered was not the result of defendant's negligent actions towards a third party, as was the case in *Norwest.* Rather, the direct consequence of defendant's actions was that plaintiffs suffered harassing telephone calls from bill collectors over a period of several months. Plaintiffs therefore satisfy all three conditions

required to recover emotional distress damages for an infringement of a legally protected interest.

As the majority notes, plaintiffs' claim can withstand summary judgment if it can otherwise support the recovery of emotional distress damages. 167 Or App at 286. It does.[1] Accordingly, I would reverse the trial court's award of summary judgment and remand for a trial on the merits.

I respectfully dissent.

---

[1] The majority takes the dissent to task for reaching an issue not raised. Yet, as the majority correctly notes, it is this court's duty to determine if "[p]laintiffs' claim, even if misdenominated, could, nevertheless, withstand summary judgment if [the claim] could otherwise support the recovery of emotional distress damages only." 167 Or App at 286.